1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    PAULA SPARKMAN,                              No. 2:24-cv-01206-DJC-DMC

12                    Plaintiff,
              v.
13                                                 ORDER
      COMERCIA BANK, et al.,
14
                    Defendants.
15

16        This case concerns fees charged to recipients of child support payments who

17    made calls to a customer support line.  Plaintiff Paula Sparkman filed this case on

18    behalf of herself and others similarly situated and now seeks to have a class certified.

19    For the reasons stated below, Plaintiff's Motion for Class Certification is granted.

20    Plaintiff is appointed as class representative and Plaintiff's counsel is appointed as

21    class counsel.

22                                    **BACKGROUND**

23        In her Complaint, Plaintiff Paula Sparkman alleges that recipients of court-

24    ordered child support payments in California may receive payments via prepaid debit

25    cards referred to as Way2Go cards.  Defendants have contracted with California Child

26    Support Services to be the sole provider of debit cards to child support recipients.[1]

27    ───────────────────────

28    [1] The Way2Go card is not the only way that individuals can receive child support payments, but it is the
      only debit card option provided.

1

1  Defendants allegedly charge Way2Go card users a $0.50 fee for calling Defendant

2  Conduent's interactive voice response ("IVR") customer support line, though Way2Go

3  users are given three free calls each month.

4       Plaintiff, a Way2Go card user, was allegedly charged fees for calling the IVR

5  line.  Specifically, Plaintiff alleges that in June 2023, she was charged $1.00 in fees for

6  five calls she made to the IVR line.  Plaintiff claims that the fee for using the IVR line is a

7  "junk fee" and an unfair practice in violation of California's Unfair Competition Law

8  ("UCL").  Plaintiff now seeks to certify a class of "thousands of other California child

9  support recipients."  (Mot. (ECF No. 30) at 7.)  Plaintiff seeks to certify a class with the

10  following definition:

11         All persons issued a California Way2Go Card® Prepaid
           Mastercard® whose accounts Defendants charged at least
12         one $0.50 fee for calling Defendants' IVR telephone system.

13

14  (*Id.* at 6.)

15       Briefing of this matter is complete (Mot.; Opp'n (ECF No. 39); Reply (ECF No.

16  48)) and the Court heard oral argument from the parties (ECF No. 51).

17                              **LEGAL STANDARD**

18       Certification of a class action is mainly governed by Federal Rule of Civil

19  Procedure 23.  A plaintiff seeking to certify a class bears the burden of demonstrating

20  that the four requirements of Rule 23(a) are met as well as at least one of the

21  requirements of Rule 23(b).  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80

22  (9th Cir. 2011).  Rule 23(a) requires the following: (1) the class is so numerous that

23  joinder of all members is impracticable; (2) there are questions of law or fact common

24  to the class; (3) the claims or defenses of the representative parties are typical of the

25  claims or defenses of the class; and (4) the representative parties will fairly and

26  adequately protect the interests of the class.  "These requirements effectively limit the

27  class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co.*

28

1    *of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal citations and quotation marks

2    omitted).

3        Plaintiff's Motion relies on Rule 23(b)(3) to satisfy the Rule 23(b) requirement.

4    Rule 23(b)(3) states that a class action may be maintained if "the court finds that the

5    questions of law or fact common to class members predominate over any questions

6    affecting only individual members, and that a class action is superior to other available

7    methods for fairly and efficiently adjudicating the controversy."

**DISCUSSION**

8

9    **I.    Rule 23(a) Requirements**

10       **A. Numerosity**

11       The Court finds that Plaintiff's proposed class satisfies the numerosity

12   requirement.  Based on the discovery conducted, Plaintiff has allegedly identified "at

13   least 160,800 California parents" who were charged IVR fees.  (Mot. at 10; Nuss Decl.

14   (ECF No. 34) ¶ 15.)  There is no single size requirement to satisfy numerosity, though

15   numerosity is generally satisfied with a class of at least 40 members.  *Arnold v. United*

16   *Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); *Kidd v. Mayorkas*, 343

17   F.R.D. 428, 437 (C.D. Cal. 2023).  Plaintiff's proposed class clearly satisfies numerosity

18   as joinder of possibly over one hundred thousand individual Way2Go card users

19   would be impracticable.  *See Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909,

20   913-14 (9th Cir. 1964).

21       Defendants do not argue that numerosity has not been satisfied in the body of

22   their Opposition, but in a footnote contend that Plaintiff has "failed to cite to any

23   credible evidence regarding the numerosity prong" because Plaintiff relies on a

24   declaration from a paralegal "who extracted information from over fifty spreadsheets

25   Conduent produced in discovery."  (Opp'n at 8 n.5.)  However, the class size provided

26   by the paralegal was, by her own statements and Defendants' own admission,

27   determined through the distillation of information contained in spreadsheets

28   produced by Defendant Conduent.  The Declaration of Plaintiff's Counsel's Paralegal,

1   Jodi Nuss, also provides, in great detail, the process by which she analyzed the data

2   provided to determine the number of individuals who were charged IVR fees.  (*See*

3   Nuss Decl. ¶¶ 3–25.)  Notably, Defendant does not contest the accuracy of the number

4   of potential class members, only the form in which Plaintiff presents this information.

5           Nothing about how Plaintiff seeks to establish numerosity appears improper.

6   Defendants cite cases where individuals were held out as expert witnesses despite

7   being a parties' counsel or otherwise acting in a "partisan" manner.  (Opp'n at 8 n.5.)

8   But these cases are inapplicable as neither Plaintiff's Counsel nor Paralegal Nuss

9   expressly holds Nuss out as an expert.  While the language of the Nuss Declaration

10  does mirror some expert declarations, Paralegal Nuss's efforts are mainly summarized

11  as the consolidation of the data in the spreadsheets provided by Defendant

12  Conduent, the removal of duplicate entries, and the counting of unique transaction

13  records and unique accountholders.  (*See* Nuss Decl.)  These tasks are well within the

14  bounds of what a party's counsel and their staff can reasonably determine without the

15  need for expert analysis.  The actual evidence at issue is not a meaningful analysis

16  conducted by the paralegal but a processed version of the information contained in

17  the spreadsheets provided in discovery.

18          Accordingly, the Court finds that the proposed class satisfies the numerosity

19  requirement of Rule 23(a).

20      **B.  Commonality[2]**

21          There are questions of law and fact that are common to the class.  A class has

22  questions of law and fact that are common to the class where "[t]heir claims . . .

23  depend upon a common contention . . . of such a nature that it is capable of classwide

24  resolution . . . ."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  This means

25  _____

26  [2] The parties' briefing on the commonality requirement of Rule 23(a)(3) and the particularity
    requirement of Rule 23(b)(3) is mixed in some regards.  This is logical given the overlap between the
    two requirements that courts have acknowledged.  *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223,

27  1233 (9th Cir. 2024).  However, even though they partially overlap, these are distinct requirements and
    thus the Court endeavors to address them separately.  Arguments raised by the parties are addressed

28  in the commonality and/or the particularity sections where they are relevant.

1     the determination of "truth or falsity [of the claim] will resolve an issue that is central to

2     the validity of each one of the claims in one stroke." *Id.*  This does not mean that all

3     questions of law and fact must be common, but the class must produce a common

4     answer to drive resolution of the litigation.  *See id.*; *see also Ellis v. Costco Wholesale*

5     *Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

6          The UCL claims brought by Plaintiff centrally ask whether the IVR fee charged

7     by Defendants is unfair within the meaning of the UCL.  Plaintiff's challenge to the

8     practice of charging the IVR fee presents common issues of fact and law common to

9     each of the proposed class members.  In determining whether this practice is unfair,

10    the courts utilize a balancing test and determine whether the policy causes substantial

11    harm to the members of the proposed class, whether the benefits of the policy

12    outweigh those injuries, and whether the injuries were avoidable.  *See infra* Discussion

13    II.A.  Where a practice is challenged, the Court can look at the harms and benefits in

14    the aggregate across those it affects.  *See Day v. GEICO Cas. Co.*, 580 F. Supp. 3d

15    830, 845 (N.D. Cal. 2022).  Similarly, in resolving such claims, the courts also look at

16    the reasonable person's state of mind, not the individual consumers.  *See In re JUUL*

17    *Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 967–68 (N.D.

18    Cal. 2022).  These questions are common to the class and can be readily resolved in

19    one stroke.  *See Wal-Mart Stores*, 564 U.S. at 350.

20          **i.  Sufficiency of UCL Claim**

21          Defendants first challenge the commonality on the argument that Plaintiff's UCL

22    claims are not viable.  (Opp'n at 9–10.)  In conducting the rigorous analysis of

23    determining commonality, "a district court *must* consider the merits [of a claim] if they

24    overlap with the Rule 23(a) requirements."  *Ellis*, 657 F.3d at 981 (emphasis in

25    original).  To this end, the Court must resolve factual disputes necessary to determine

26    whether the claim affects the class as a whole.  *Id.* at 983.  However, to restate, the

27    consideration of a claim's merits is only relevant insofar as it overlaps with the

28    commonality requirement.  *Id.* at 981.  That is to say, the Court only considers the

1    merits of a claim to resolve whether common questions of fact and law exist, not to

2    determine whether Plaintiff will ultimately prevail.

3        Here, the merits issues Defendants raise do not go to the determination of

4    commonality.  Defendants summarize their first argument as being that commonality

5    cannot be established because "[t]he $0.50 fee is not inherently unfair or illegal[.]"[3]

6    (Opp'n at 10.)  It is entirely possible that Defendants are correct in their contention but

7    resolving this is not necessary to reach this issue to determine whether the issues of

8    fact and law are common to the class.  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122

9    (9th Cir. 2017) ("Plaintiffs' position in this regard may or may not prevail, but that is a

10   merits question not appropriately addressed at the class certification stage." (citing

11   *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013))).  In fact,

12   Defendants' argument thus supports commonality as whether the IVR fee charged is

13   unfair or illegal is a question that has a common answer across class members and can

14   be resolved in a single stroke.  *See Wal-Mart*, 564 U.S. at 350.  As such, Defendants'

15   opposition to commonality on this basis is unpersuasive.

16       **ii.  Same Injury**

17       Defendants also argue that the proposed class fails commonality because

18   Plaintiff cannot show the members of the putative class suffered the same injury.

19   Specifically, Defendant argues that some of the class members "did not suffer any

20   injury because their accounts were depleted when the IVR fees were charged and

21   were never replenished[,]" and others "only a portion of the $.50 IVR fee because they

22   had less than $.50 in their accounts when the fees were charged and their accounts

23   where never refilled."  (Opp'n at 11.)  In essence, Defendants' contention is that

24   because the proposed class contains individuals who suffered the full harm along with

25

26   [3] At oral argument Defendants also argued that Plaintiff incurred the IVR fees by her own choice as
there were a website and app available which did not charge a fee to use.  Plaintiff argued that the fees
27   were incurred because of issues with "pay at the pump" transactions that could not be resolved with the
app or website and required calls.  These are issues going to the merits of Plaintiff's claims and do not
28   have any bearing on commonality.

1    those who suffered a lesser or no harm, commonality is not satisfied.  However, as

2    stated by the Ninth Circuit in *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136

3    (9th Cir. 2016), "even a well-defined class may inevitably contain some individuals who

4    have suffered no harm as a result of a defendant's unlawful conduct."[4]  The proposed

5    class covers individuals who were subject to the IVR fee.  It is not necessary that

6    Plaintiff eliminate those who were subject to the same conduct by Defendant but did

7    not suffer an injury as a result as these issues are not generally relevant on class

8    certification.  *See id.* (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d

9    802, 823 (7th Cir. 2012) stating that "[s]ome class members' claims will fail on the

10   merits if and when damages are decided, a fact generally irrelevant to the district

11   court's decision on class certification.").  This is an issue for the determination of

12   damages, not commonality.

13                **iii. Individualized Defenses**

14        Finally, Defendants contend that commonality does not exist because the class

15   is not limited to California residents.  (Opp'n at 11.)  Defendants argue that because of

16   this, these non-California class members will be subject to unique defenses as to

17   whether their claims can be brought under the UCL.  (*Id.* at 11–12.)  This argument

18   rests on relatively threadbare ground.  Defendants provide a declaration from Gary

19   Rogowski, Senior Manager of the California Way2Go program, who states that "[n]ot

20   all California Way2Go cardholders are California residents."  (Rogowski Decl. (ECF No.

21   40) ¶ 24.)  Based solely on this sentence from Mr. Rogowski, Defendants argue that

22   the proposed class must include non-California residents.  However, taking as true

23   Defendants' representation that the proposed class contains non-California residents,

24   there remain questions of fact and law common to the class, and class members will

25   not be subject to individual defenses.

26

27   _____

     [4] This statement of the Ninth Circuit was made in the context of whether the Rule 23(b)(3)
     predominance requirement had been satisfied, but the principle underlying the statement is equally
28   applicable in the Rule 23(a) commonality context.

1    Defendants will undoubtedly raise the defense that the UCL claims are not

2    viable for a portion of the class as they are non-residents.  The parties will litigate that

3    issue and the Court will resolve it, potentially narrowing the class in the process or

4    designate a sub-class.  But this issue does not represent an individual defense;

5    instead, it is a single affirmative defense that possibly applies to the portion of the

6    class.  The central issue, common to both California and non-California residents, is

7    whether Defendants' actions in charging the IVR fees constituted an unfair business

8    practice.

9    Accordingly, Defendants' objections to commonality do not outweigh the clear

10    common questions of fact and law that apply to the class.  As such, the Court finds the

11    commonality requirement satisfied.

12    **C.  Typicality**

13    The Court also finds that Plaintiff's claims are sufficiently typical of those of other

14    proposed class members.  The typicality requirement is satisfied when the claims of

15    the named plaintiff are "reasonably co-extensive with those of absent class

16    members[,]" though they need not be substantially identical to the claims of all class

17    members.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "The test of

18    typicality is whether other members have the same or similar injury, whether the action

19    is based on conduct which is not unique to the named plaintiffs, and whether other

20    class members have been injured by the same course of conduct."  *Ellis*, 657 F.3d at

21    984 (internal citation and quotation marks omitted).  In considering typicality, courts

22    are concerned with "the nature of the claim or defense of the class representative, and

23    not to the specific facts from which it arose or the relief sought."  *Hanon v.*

24    *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (cleaned up).

25    Here, the typicality requirement is satisfied.  Plaintiff's claims concern the IVR

26    fees she was charged for calls made to the IVR customer support line in connection

27    with her Way2Go card.  This is the same injury suffered by every other member of the

28    proposed class.  Similarly, Plaintiff and class members' claims all arise from the same

1  course of conduct.  Each of the proposed class members made calls to the IVR

2  customer support line multiple times and Defendant charged an IVR fee for making

3  those calls.  Finally, the injuries that the class members and Plaintiff suffered were all

4  the result of that conduct.

5        Defendants argue that Plaintiff's claims are not typical because Plaintiff may

6  have had other options to receive her court-ordered child support payments, and that

7  typicality cannot be satisfied unless "Plaintiff can establish that she had no alternative

8  other than to receive benefits through the Way2Go card and that the Terms of Use

9  were imposed on her due [sic] can she avoid analysis of her decisions and the

10 defenses unique to her." (Opp'n at 13.)  Defendants contend that because Plaintiff

11 had other options to receive child support payment, she cannot claim that she was

12 forced to select the Way2Go card or that the terms of the contract to obtain a Way2Go

13 card cannot constitute a contract of adhesion.  These arguments are unpersuasive.

14        Plaintiff's claim is that the Way2Go card was the only debit card option available

15 to receive child support payments and that the IVR fee constituted an unfair business

16 practice under the UCL.  That Plaintiff had other, non-equivalent options to receive

17 those payments does not mean that Plaintiff cannot claim that the IVR fee constitutes

18 an unfair practice.  Defendants cite no case that suggests Plaintiff is not typical

19 because she had other, different options to receive payment available.  Like all class

20 members, Plaintiff selected the only debit card option to receive payment and was

21 subject to the IVR fees.  Additionally, despite Defendants' argument to the contrary

22 Terms of Use for the Way2Go card may even constitute a contract of adhesion.  The

23 Terms of Use were standardized, Defendants were in a superior bargaining position

24 given they were one of only three options to receive child support payments and the

25 only debit card option, and there was no apparent ability for Plaintiff to negotiate the

26

27

28

9

1    Terms of Use.[5]  *See Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.

2    4th 83, 113 (2000).  This is a situation common to all class members, regardless of

3    their access to a bank account.[6]

4        Finally, Defendants themselves note that <u>all</u> child support payment recipients

5    had the alternative option to receive payment via paper check.  (Opp'n at 14.)  Thus,

6    Plaintiff's access to alternative options to receive child support payments is true of the

7    <u>entire class</u>.  Defendants have provided no explanation for why Plaintiff having a bank

8    account would render her claim any less typical given all class members had

9    alternative options to receive these payments.

10        Accordingly, the Court finds that Plaintiff's claims are sufficiently typical of those

11   of other members of the proposed class.  This requirement of Rule 23(a) is thus

12   satisfied.

13       **D.  Adequacy of Representation**

14        Plaintiff is also an adequate representative of the class.  Rule 23(a)(4) requires

15   that Plaintiff, as a representative party, "fairly and adequately protect[s] the interests of

16   the class."  To make this determination, the Court considers two main questions: "(1)

17   Do the representative plaintiffs and their counsel have any conflicts of interest with

18   other class members, and (2) will the representative plaintiffs and their counsel

19   prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d

20   938, 957 (9th Cir. 2003).  Here, there is no indication that Plaintiff or counsel have any

21   conflicts of interest with other class members.  Further, it appears that Plaintiff and

22   counsel have every interest in prosecuting this action vigorously on behalf of the class.

23

24

25   [5] The Court need not make a final decision on whether the Terms of Use constitute a contract of
     adhesion at this stage – though it seems highly likely to constitute one – as it is sufficient at this stage to
26   simply say that this issue applies to the class as a whole and thus Plaintiff's claims are typical.

27   [6] Plaintiff also disputes that she had a checking account at the time she chose to receive payments via
     the Way2Go card.  (Reply at 13.)  The Court need not reach this issue but Defendants' argument against
28   typicality may be invalid on this basis as well.

1    Defendants argue that Plaintiff is an inadequate party representative under the

2    latter question as Defendants contest her honesty and trustworthiness.  Along with the

3    pending UCL claim, Plaintiff originally brought claims based on her belief that

4    Defendants were improperly charging her and other class members the IVR fee

5    before they had used their three "free" calls based on the fact that she was charged

6    $1.00 in June 2023 when she made only four calls.  Plaintiff, by her own admission,

7    was mistaken in her belief that only four calls had been made in connection with her

8    Way2Go card as she had made another call from her daughter's phone.  (Reply at 11.)

9    As a result, Plaintiff has abandoned the theory that Defendants were improperly

10    charging IVR fees in violation of contract terms.  Contrary to Defendants' argument

11    that this suggests Plaintiff lacks credibility, this shows that Plaintiff acted responsibly in

12    litigating this action.  Plaintiff brought some claims based on a certain set of facts she

13    believed to be true.  Confronted with evidence to the contrary, Plaintiff accepted she

14    was mistaken and dropped the non-viable claims.  This is conduct consistent with an

15    honest litigant who maintains her credibility through the course of litigation.

16    Defendant also takes aim at Plaintiff's credibility by disputing that she was, in

17    fact, disconnected from the IVR line on two occasions.  But the parties' disagreement

18    over a fact of dubious significance to the UCL claim does not establish that Plaintiff is

19    and adequate representative of the class.  Whether Plaintiff was disconnected from

20    the IVR line is an open factual question.  Defendants may feel that the evidence shows

21    she was not disconnected but it is not conclusive on this point and certainly does not

22    show Plaintiff lacks credibility.[7]

23

24

25    [7] In fact, while Defendants state that Conduent's records dispute that Plaintiff was disconnected from
      the IVR line they solely cite Exhibit C to the Perkins declaration.  (Opp'n at 16.)  Exhibit C appears to be
26    Plaintiff's phone records, not Conduent's, and nothing in those records appear to conclusively show
      that Plaintiff was not disconnected.  (Perkins Decl., Ex. C (ECF No. 41-3).)  In fact, two calls are longer (11
27    and 31 minutes) while two are shorter (3 and 4 minutes).  (Id.)  While this does not definitively establish
      that Plaintiff was disconnected twice, this information could be viewed as supporting Plaintiff's
28    allegation.

1    Finally, Defendants also contend that Plaintiff is not an adequate representative

2    because she was unclear about whether her claims related to all IVR fees charged, IVR

3    fees charged for disconnected calls, and/or IVR fees that were improperly charged for

4    a "free" call.  (Opp'n at 16–17.)  The transcript of Plaintiff's deposition makes it clear

5    that Plaintiff had some confusion about the scope of her claims.  However, as Plaintiff

6    notes, the bar for courts to find a class representative inadequate based on their

7    unfamiliarity with the details of their case is high.  *See Moeller v. Taco Bell Corp.*, 220

8    F.R.D. 604, 611 (N.D. Cal. 2004), *amended in part*, 2012 WL 3070863 (N.D. Cal. July

9    26, 2012).  Plaintiffs are not expected to have a perfect understanding of the legal

10    details of their case.  Plaintiff's confusion here is innocuous; it seems stem from the

11    changes to Plaintiff's case and claims that had recently occurred when her deposition

12    took place.  This minor confusion is far from indicative of a plaintiff who is "startlingly

13    unfamiliar" with their case.  *Id.*

14    Given the above, the Court finds that Plaintiff will fairly and adequately

15    represent the proposed class.  As such, the final requirement of Rule 23(a) has been

16    met.

17    **II.    Rule 23(b)(3)**

18    Plaintiff seeks certification under the predominance requirement of Rule

19    23(b)(3).  Under that subsection, a class may be certified if "the court finds that the

20    questions of law or fact common to class members predominate over any questions

21    affecting only individual members, and that a class action is superior to other available

22    methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23    23(b)(3).  This inquiry centrally asks whether the proposed class is "sufficiently

24    cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*,

25    521 U.S. 591, 623 (1997).

26    **A. Predominance**

27    The predominance requirement often overlaps with Rule 23(a) considerations,

28    in particular the commonality requirement.  *DZ Reserve*, 96 F.4th at 1233.  However,

12

1    even where commonality is satisfied, predominance may not be as "the predominance

2    criterion is far more demanding[,]" given it requires not only common issues but that

3    the common issues predominate.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591,

4    623–24 (1997); *DZ Reserve*, 96 F.4th at 1233.  To properly analyze predominance, the

5    Court engages in a three-step analysis:

6
7                  First, we identify which questions are central to the
                   plaintiffs' claim. Second, we determine which of these
8                  questions are common to the class and which present
                   individualized issues. Third, we analyze whether the
9                  common questions predominate over the individual
                   questions.

10

11    *DZ Reserve*, 96 F.4th at 1233.

12            In the first step, the Court considers the elements of Plaintiff's cause of action.

13    Plaintiff claims Defendants' actions in charging a fee for calls to their IVR customer

14    support line is unfair in violation of the UCL.  A plaintiff bringing an unfairness prong

15    UCL claim must show that "(1) the consumer injury is substantial; (2) the injury is not

16    outweighed by any countervailing benefits to consumers or competition; and (3) the

17    injury could not reasonably have been avoided by consumers themselves."

18    *Sepanossian v. Nat. Ready Mix Co.*, 97 Cal. App. 5th 192, 201 (2023) (internal citations

19    and quotation marks omitted).

20            The second step – determining whether questions are common to the class and

21    present individualized issues – is identical to the standard for commonality under Rule

22    23(a)(2).  *DZ Reserve*, 96 F.4th at 1233.  Thus, the Court's prior determination of

23    commonality satisfies this step.

24            Third and finally, the Court must determine whether these common issues

25    predominate.  In doing so, the Court must determine "whether the common,

26    aggregation-enabling, issues in the case are more prevalent or important than the

27    non-common, aggregation-defeating, individual issues."  *Tyson Foods, Inc. v.*

28    *Bouaphakeo*, 577 U.S. 442, 453 (2016); *see DZ Reserve*, 96 F.4th at 1233.  Here,

1   individual issues do not predominate over the issues common to the class.  Plaintiff

2   centrally seeks to challenge the IVR fee as unfair and the questions underlying the

3   elements of that claim are generally common to the proposed class.  It is certainly

4   true, as Defendants contend, that sections of the proposed class may be subject to

5   distinct factual or legal issues, most notably being, whether individual class members

6   suffered injury.  However, these individual questions do not predominate.  The more

7   important questions – whether the $0.50 fee is a substantial injury, whether the injury

8   is outweighed by the benefits, and whether the injury could have been avoided – are

9   common to the entire proposed class and clearly predominate over any individual

10  issues.

11       It is readily accepted that courts may adjudicate such issues jointly where the

12  unfair prong UCL claim "hinges on the existence of a uniform business practice or

13  series of practices amenable to some degree of precise definition.  *See Newton v. Am.*

14  *Debt Servs., Inc.*, No. 11-cv-3228-EMC, 2015 WL 3614197, at *10 (N.D. Cal. June 9,

15  2015).  This is true even where, as is the case here, some individual inquiry could be

16  required.  *Id.*  The class is thus sufficiently cohesive to warrant joint adjudication.

17  *Tyson Foods, Inc.*, 577 U.S. at 453.

18       **B.  Superiority**

19       Finally, the Court must determine whether a class action is the superior

20  approach to adjudicating the issues presented.  *See* Fed. R. Civ. P. 23(b)(3).  In

21  general, Courts consider the following factors in determining whether a class action is

22  superior:

23       (A) the class members' interests in individually controlling
         the prosecution or defense of separate actions; (B) the
24       extent and nature of any litigation concerning the
         controversy already begun by or against class members;
25       (C) the desirability or undesirability of concentrating the
         litigation of the claims in the particular forum; and (D) the
26       likely difficulties in managing a class action.
27

28  *Id.*

1    Here, a class action is the superior format in which to litigate these claims.  The

2  large class size, small individual damages, and presence of common predominating

3  issues all clearly counsel that a class action is superior.  Not only are class members

4  likely disinterested in pursuing these claims individually given the low damages each

5  class member allegedly suffered, but the large class size also means permitting these

6  claims to proceed separately would be unwieldy and present far greater difficulties

7  than permitting a class action.  Defendants do not contest the superiority of a class

8  action in resolving these claims.  (*See* Opp'n.)

9    Accordingly, the Court finds that a class action is the superior form for

10  adjudicating Plaintiff's UCL claims over Defendants IVR fees.

11                              **CONCLUSION**

12    For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for

13  Class Certification (ECF No. 30) is GRANTED. Plaintiff is appointed as class

14  representative and Plaintiff's counsel is appointed as class counsel.

15

16    IT IS SO ORDERED.

17  Dated:   **February 20, 2025**

18                                     Hon. Daniel J. Calabretta
                                        UNITED STATES DISTRICT JUDGE

19

20

21

22  DJC1 – sparkman24cv01206.classcert

23

24

25

26

27

28